## A10A0705. NEAL v. AUGUSTA-RICHMOND COUNTY PERSONNEL BOARD.

(695 SE2d 318)

JOHNSON, Judge.

Edward Neal, a firefighter of 25 years with the City of Augusta, filed this discretionary appeal from the trial court's decision upholding his termination by the Augusta-Richmond County Personnel Board ("Augusta-Richmond County"). In his appeal, Neal challenges the admission of drug test results in the administrative proceeding where no one with knowledge of the lab test or testing procedures used in his case testified at the hearing. Under the circumstances presented in this case, we find that the evidence should not have been admitted and reverse the judgment of the trial court.

The relevant facts are as follows. The Augusta-Richmond County Commission required its employees to submit to random drug testing as part of its substance abuse policy. Employees could be terminated from employment "for cause," and testing positive for illegal drug use constituted grounds for termination.

Pursuant to the random drug test provision, a technician collected a urine specimen from Neal and sent the sample to an independent laboratory for testing. The written lab report indicated a result of "positive" for marijuana, and the result was sent from the lab to a physician employed by the County Commission. The physician, known as a medical review officer, contacted Neal to ask him if he was taking any medication that might explain the positive test result; Neal was not taking any such medication. The medical review officer sent a report to a manager with the county's risk management office stating that Neal's test result was positive for marijuana. The manager notified the fire department of the result and recommended termination. The fire chief informed Neal that he was being placed on administrative leave and recommended for termination, and that he had the right to appeal the disciplinary action.

Contending, among other things, that he did not use marijuana and the test result was wrong, Neal requested an administrative hearing. At the hearing, the written lab report and testimony regarding the report were admitted into evidence, despite Neal's objection based on hearsay and confrontation grounds. No one from the testing lab testified at the hearing. After the hearing, Augusta-Richmond County upheld the recommendation to terminate Neal. Neal filed a writ of certiorari to the superior court for a review of the administrative decision. We granted Neal's application for discretionary appeal from the denial of certiorari.

The appropriate standard of review to be applied to issues of fact on writ of certiorari to the superior court is whether the decision

below was supported by any evidence.[1] On appeal to this Court, "our duty is not to review whether the record supports the superior court's decision but whether the record supports the initial decision of the local governing body or administrative agency."[2]

1. Neal contends that the personnel board erred by admitting the lab report into evidence, as that violated his constitutional right to confront the witnesses against him. Neal adds that the lab report does not fit within any recognized exception to the rule against the admission of hearsay evidence. We agree and reverse.

Augusta-Richmond County is correct that the Sixth Amendment right to confrontation only applies in criminal cases.[3] However, this is not fatal to Neal's claim that he had a right to confront the witnesses against him in the administrative proceeding.[4]

Augusta-Richmond County concedes that Neal had a property interest in continued employment and had a right not to be terminated without due process of law.[5] Augusta-Richmond County also concedes that Neal was entitled to notice of the charges against him, an explanation of the employer's evidence and an opportunity to present his side of the story.[6] Augusta-Richmond County urges, however, that that opportunity does not include the right to confront witnesses against him. We find that Neal's property interest in his employment with the County is such that due process requires he be afforded the right to confront witnesses.[7]

> The right to compel witnesses and the right to confront and cross-examine witnesses are fundamental rights, found in the Bill of Rights. They are essential to the ability to offer a defense, and are basic to our system of jurisprudence. . . . The right to confrontation . . . forces the witness to submit to cross-examination[,] the "greatest legal engine ever invented for the discovery of truth." Confrontation aids the factfinder by allowing it to observe the demeanor of the

---

[1] *City of Atlanta Govt. v. Smith*, 228 Ga. App. 864, 865 (1) (493 SE2d 51) (1997); *Glass v. City of Atlanta*, 293 Ga. App. 11, 14 (1) (666 SE2d 406) (2008).

[2] *Glass*, supra; see also *Davane v. Thurmond*, 300 Ga. App. 474, 475 (685 SE2d 446) (2009).

[3] *State of Ga. v. Jackson*, 269 Ga. 308, 309, n. 2 (496 SE2d 912) (1998).

[4] Id.

[5] See generally *Brownlee v. Williams*, 233 Ga. 548, 551-552 (1) (212 SE2d 359) (1975).

[6] *Cleveland Bd. of Ed. v. Loudermill*, 470 U. S. 532, 546 (105 SC 1487, 84 LE2d 494) (1985).

[7] See *State of Ga. v. Jackson*, supra at 310; *Blackburn v. Blackburn*, 249 Ga. 689, 693 (2) (292 SE2d 821) (1982); *In the Interest of M. S.*, 178 Ga. App. 380, 381 (343 SE2d 152) (1986).

witness and assess the witness' credibility. These rights are at the very core of the concept of a fair hearing.[8]

Administrative disciplinary hearings are neither fitted with all the trappings of criminal procedure, nor all the trappings of civil procedure; however, each party must be afforded a fair opportunity to present its case.[9] A fair hearing includes the right to confront and cross-examine witnesses.[10]

In this case, Neal was denied the right to confront anyone involved in conducting the test or concluding that marijuana was present in his body.[11] It was not enough for Neal to confront the medical review officer who merely received the test results from the lab, reviewed the chain of custody form "to make sure that [the employee's identification number and the number on the lab report] match up," and called Neal to ask if he was taking any medication that might explain the positive test result. Although the medical review officer stated that he "put together" an "Employer Drug Testing Summary Report" which indicated that the test was positive for marijuana, that testimony is of little value since the witness did not elaborate upon what the document consisted of or was based upon, and no such document is in the record. When asked what information he reviews to verify or certify that the result on a particular test is positive, the medical review officer stated that he asks the employee whether there were any other medical reasons for the positive result, reviews the chain of custody, "and that's basically it." The medical review officer testified that he had never been to the testing lab, did not know what procedures were used at the lab, did not know the chemist whose typed name was on the lab report, had never conducted or seen conducted a lab test such as the one used here, and based his testimony on the report he received from the lab. And when asked how he knows that the test results obtained from the lab are accurate, the medical review officer replied that the laboratory is certified by the federal government. He could not "say whether that test was good or not," only that "the test that came back from the lab was positive."

This is not a case in which the testifying witness independently concluded that the sample contained a controlled substance. This

---

[8] (Citations and punctuation omitted.) *State of Ga. v. Jackson*, supra at 310 (1).

[9] *N. Fulton Community Hosp. v. State Health Planning & Dev. Agency*, 168 Ga. App. 801, 806 (3) (310 SE2d 764) (1983).

[10] *Finch v. Caldwell*, 155 Ga. App. 813, 816 (273 SE2d 216) (1980).

[11] See *Melendez-Diaz v. Massachusetts*, ___ U. S. ___ (129 SC 2527, 174 LE2d 314) (2009) (defendant's confrontation rights violated by admission of sworn affidavit of non-testifying lab analyst to prove material seized by police was contraband).

case is distinguishable from others in which we found the evidence admissible without the testimony of the technician who performed the test. In those cases, for example, the testifying witness: (i) supervised the lab technician then reviewed the data and independently concluded that the sample contained drugs;[12] (ii) based his opinion on data gathered by others after reviewing the underlying testing procedures and data gathered for accuracy;[13] (iii) reviewed another expert's work and reached the same conclusion;[14] (iv) testified as to the testing procedure used, stated that he reviewed the tests and the data to make the determination concerning whether the substance was contraband, described the checks and balances designed to ensure the testing is done according to procedure, and stated that he runs controls after the tests are conducted and that the technician only processes the sample but does not review the data and determine whether the result is positive;[15] or (v) reviewed the chemist's work for accuracy and exercised his own judgment as to whether the sample contained marijuana.[16] The medical review officer in this case could not testify about the accuracy of the test result, and acted as "a mere conduit for the [non-testifying technician's] findings."[17]

Moreover, as Neal urges, the lab results were hearsay.[18] Hearsay is without probative value to establish any fact.[19] We have held that hearsay is not appropriate evidence even in an administrative proceeding.[20] Other than the lab report, there is no factual basis for the medical review officer's testimony that Neal tested positive for marijuana. It follows that the County erred in terminating Neal on the basis of the positive drug test results.[21]

The significance of Neal's interest in retaining public employment should not be minimized. Our courts have recognized the

---

[12] Compare *Dunn v. State*, 292 Ga. App. 667, 669 (1) (665 SE2d 377) (2008).

[13] Compare *Watkins v. State*, 285 Ga. 355, 358 (2) (676 SE2d 196) (2009).

[14] Compare *Rector v. State*, 285 Ga. 714, 715 (4) (681 SE2d 157) (2009).

[15] Compare *Carolina v. State*, 302 Ga. App. 40, 41 (690 SE2d 435) (2010).

[16] Compare *Haywood v. State*, 301 Ga. App. 717, 722 (3) (689 SE2d 82) (2009).

[17] Compare *Rector*, supra at 715-716 (4) (toxicologist could testify about toxicology report prepared by another doctor where he had reviewed the work of the doctor and then reached the same conclusion, and there was no reasonable probability that the evidence contributed to the verdict).

[18] See *Miller v. State*, 266 Ga. 850, 852 (1) (472 SE2d 74) (1996).

[19] *Finch*, supra at 815.

[20] See *McGahee v. Yamaha Motor Mfg. Corp. of America*, 214 Ga. App. 473, 474 (448 SE2d 249) (1994) (hearsay is without probative value to establish any fact, and we have held this to be the rule even in administrative hearings); *Finch*, supra (reversing administrative decision based solely on hearsay).

[21] *Finch*, supra.

severity of depriving a person of their means of livelihood.[22] While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job.[23]

We note that the case upon which the superior court relied for allowing hearsay dealt with the specific rules governing the Atlanta Civil Service Board, and did not involve a situation where the primary or only evidence against a terminated employee was hearsay.[24] Here, there is no such rule and the only evidence against Neal was hearsay.[25] The evidence was improperly considered, and reversal is required.

2. Our holding in Division 1 renders Neal's remaining arguments moot.

*Judgment reversed. Miller, C. J., and Phipps, P. J., concur.*

DECIDED APRIL 28, 2010 —
RECONSIDERATION DENIED MAY 17, 2010 — ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Christopher G. Nicholson*, for appellant.
*Shepard, Plunkett, Hamilton, Boudreaux & Tisdale, Daniel W. Hamilton*, for appellee.

---

[22] *Loudermill*, supra at 543.

[23] Id.

[24] See *Glass*, supra (municipal ordinance provides that formal rules of evidence not to be strictly applied).

[25] Compare *Carolina*, supra.